IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JCM INNOVATION CORP., a Nevada )
corporation, and JCM AMERICAN )
CORPORATION, a Nevada )
corporation, )
     )
             Plaintiffs, )
     )
             v. )   C.A. No. N15C-10-255 EMD CCLD
     )
FL ACQUISITION HOLDINGS, INC., )
a Delaware corporation, and )
AMERICAN CAPITAL, LTD., a )
Delaware corporation, )
     )
             Defendants. )

Submitted:  June 3, 2016
Decided:  September 30, 2016

*Upon Defendants' Motion to Dismiss*
***GRANTED in part and DENIED in part***

Sean J. Bellew, Esquire, and Jarret P. Hitchings, Esquire, Duane Morris LLP, Wilmington, Delaware and Robert L. Ruben, Esquire, Duane Morris LLP, Baltimore, Maryland.  *Attorneys for Plaintiffs JCM Innovation Corp. and JCM American Corporation.*

Gregory V. Varallo, Esquire, Robert J. Stearn, Jr., Esquire, Robert L. Burns, Esquire, and Matthew D. Perri, Esquire, Richards, Layton & Finger, P.A., Wilmington Delaware and John C. Massaro, Esquire, and Dana Y. Elliott, Esquire, Arnold & Porter LLP, Washington, DC. *Attorneys for Defendants FL Acquisition Holdings, Inc. and American Capital Ltd.*

**DAVIS, J.**

## INTRODUCTION

This action is assigned to the Complex Commercial Litigation Division.  The case arises

out of a purchase of a company, FutureLogic Group, Inc. n/k/a FutureLogic Group, LLC

("FutureLogic"), through an asset purchase agreement (the "Agreement").  Plaintiffs JCM

Innovation Corp. ("JCM Innovation") and JCM American Corporation ("JCM American" and

together with JCM Innovation, "JCM") purchased FutureLogic from Defendants FL Acquisition

Holdings, Inc. ("FL Holdings") and American Capital Ltd. ("ACAS" and together with FL Holdings, "Defendants"). Subsequent to FutureLogic's sale, third parties brought claims against JCM for malfunctions relating to casino gaming printers manufactured by FutureLogic. Through the Complaint, JCM seeks to recover these costs from Defendants and to recover JCM's investment in FutureLogic. Generally, JCM claims Defendants fraudulently induced JCM into buying FutureLogic, intentionally misrepresented the casino gaming printer's viability, willfully sold JCM a defective product and breached the Agreement. Defendants have moved to dismiss all counts of the Complaint, contending that (i) the Court lacks jurisdiction, (ii) the Agreement's ADR requirement bars the action, and (iii) the Complaint fails to state any claims upon which relief can be granted.

For the reasons set forth below, the Court finds and holds that venue is proper here; that Section 2.5 of the Agreement is not a mandatory ADR process that would stay this civil action; and that Counts I, II, III and IV of the Complaint fail to state a claim upon which relief can be granted. In addition, the Court finds and holds that Counts V and V[1] state claims upon which relief can be granted. Accordingly, the Court will **GRANT** in part and **DENY** in part the Defendants' Motion to Dismiss

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. FACTUAL BACKGROUND

The parties contracted for the purchase of FutureLogic.[3] JCM Innovation and JCM American are Nevada Corporations which sell printers and currency validators to slot machine

---

[1] The Complaint asserts two Count V – one for Fraud and one for Unjust Enrichment. The Court will treat these as two claims and the use of Count V twice as a typo.

[2] As Defendants' Motion to Dismiss is a motion filed under Superior Court Civil Rule 12, the Court will, unless otherwise indicated, be using the facts as alleged in JCM's Complaint ("Pls.' Comp."). *See, e.g., Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)

[3] Pls.' Comp. at ¶¶9–13.

original equipment manufacturers.[4] JCM Innovation is the buyer under the Agreement.[5] JCM American was the Purchaser Guarantor.[6]

FL Holdings is a Delaware Corporation, of which Defendant ACAS was the majority owner and controller.[7] FL Holdings is the seller under the Agreement.[8] ACAS, a private equity firm, was the Securityholders' Representative.[9] Several company officers and directors were also affiliated with ACAS.[10]

FutureLogic sold gaming printers.[11] JCM was interested in FutureLogic's state of the art printer, the Gen3.[12] In early 2014, Cowen & Co., investment banker for Defendants, invited JCM to participate in a private auction process for FutureLogic's sale.[13] Defendants held two meetings with JCM in April and May 2014.[14] In the meetings, Defendants alleged the Gen3 printers were "fast, robust, next generation technology."[15] In June 2014, Defendants selected JCM as the preferred bidder for FutureLogic.[16]

In July 2014, Defendants delivered financial statements, including future Gen3 warranty costs, to JCM.[17] The parties did their due diligence the week of July 7, 2014.[18] The parties executed the Agreement on August 1, 2014.[19]

In the Agreement, Defendants warranted that:

---

[4] *Id.* at ¶4
[5] *Id.* at ¶5
[6] *Id.*
[7] *Id.* at ¶7
[8] *Id.* at ¶8
[9] *Id.*
[10] *Id.* at ¶¶14–20.
[11] *Id.* at ¶9.
[12] *Id.* at ¶13.
[13] *Id.*
[14] *Id.* at ¶¶21–23.
[15] *Id.*
[16] *Id.* at ¶26.
[17] *Id.* at ¶¶27–29.
[18] *Id.* at ¶30.
[19] *Id.* at ¶31.

All Products have conformed in all material respects with all applicable contractual commitments and all express and, to the Company's Knowledge, implied warranties, and neither the Company nor its Subsidiaries have any Liability for replacement or repair thereof or other damages in connection therewith beyond the Company's or any Subsidiary's standard warranties and those imposed by applicable Law. All Products are subject to standard terms and conditions of sale, license, lease, or delivery, true, complete and correct copies of which have been delivered to Purchaser and contain the applicable guaranty, warranty, and indemnity provisions. No Product is subject to any guaranty, warranty, or other indemnity beyond the applicable standard terms and conditions of any such sale, license, lease, or delivery and those imposed by applicable Law. Without limiting the generality of the foregoing, no product liability claim has been made against the Company or any of its Subsidiaries as a result of any defect in design, manufacture, materials or workmanship, arising out of, relating to or resulting from any injury to any individual or property as a result of the ownership, possession or use of any product manufactured, sold, leased or distributed by the Company or any of its Subsidiaries, other than ordinary warranty claims substantially consistent with the warranty reserves established by the Company and its Subsidiaries. Neither the Company nor any of its Subsidiaries have received written notice as to any claim for personal injury or death, any claim for property, economic, punitive or exemplary damages, any claim for contribution or indemnification or any claim for injunctive relief, in each case in connection with any product manufactured, sold, leased or distributed by the Company or any of its Subsidiaries. There has not been any product recall (voluntary, involuntary or otherwise) by the Company or any of its Subsidiaries.[20]

Further, Defendants agreed to promptly notify JCM in writing of any defects.[21]

JCM alleges that Defendants intentionally withheld how poor the Gen3 printers performed. JCM alleges Defendants knew of significant quality issues relating to the Gen3 printers since November 2013, well before JCM bought the company.[22] JCM also alleges that Defendants substantially and intentionally understated warranty costs related to the Gen3.

---

[20] Pls. Comp., Ex. A., pp. 38–39.
[21] *Id.* p. 51. ("From the date hereof until the Closing, Seller shall promptly after becoming aware of the applicable matter notify Purchaser in writing and Purchaser shall promptly after becoming aware of the applicable matter notify Seller in writing of: a) any fact, circumstance, event or action the existence, occurrence or taking of which (i) has had, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect (or, in the case of Purchaser, a material adverse effect on its ability to consummate the transactions contemplated by this Agreement), (ii) has resulted in, or could reasonably be expected to result in, any representation or warranty made by Seller or Purchaser, as applicable, hereunder not being true and correct. . ..").
[22] Pls. Comp. at ¶¶39–50.

4

**B. PROCEDURAL BACKGROUND**

On November 3, 2015, JCM Innovation and JCM American filed this complaint against FL Holdings and ACAS. On December 30, 2015, Defendants filed their Defendants' Motion to Dismiss and Defendants' Opening Brief in Support of Their Motion to Dismiss ("Defs.' Br."). Defendants contend that the Complaint should be dismissed because: (1) the Court does not have venue; (2) the Agreement mandates ADR prior to initiating any civil proceeding; (3) the Agreement's exclusive remedy provisions bars most, if not all, of JCM's claims for relief; (4) JCM has not satisfied the Agreement's prerequisites for bringing an indemnification claim; and (5) JCM has not plead fraud with particularity.

On February 15, 2016, JCM filed Plaintiffs' Answering Brief in Support of Their Objection to Defendants' Motion to Dismiss ("Pls.' Ans."). JCM's opposition alleges the Court has jurisdiction; it plead fraud with particularity; there is no mandatory ADR; and fraud vitiates the Agreement, allowing JCM to bring the other claims.

On March 7, 2016, Defendants filed their Defendants' Reply in Support of Their Motion to Dismiss ("Defs.' Rep."). On May 23, 2016, the Court heard oral argument. The Court requested the parties file supplemental briefing by June 3, 2016. The parties filed their supplemental briefs on June 3, 2016. The Court then took the matters under advisement and reserved decision.

## STANDARD OF REVIEW

**A. MOTION TO DISMISS – IMPROPER VENUE**

Superior Court Civil Rule 12(b)(3) governs a motion to dismiss or stay on the basis of improper venue. The Court should give effect to private agreements' terms to resolve disputes in a contractually-designated judicial forum, out of respect for the parties' contractual

5

designation.[23]  The Court can grant dismissal prior to discovery, on the basis of affidavits and documentary evidence, if the plaintiff cannot make out a *prima facie* case in support of its position.[24]  The Court generally will allow the plaintiff to take discovery when the plaintiff advances a non-frivolous legal argument that would defeat the motion if the facts turn out to be as alleged.[25]

## B. MOTION TO DISMISS – FAILURE TO STATE A CLAIM

Upon a motion to dismiss, the Court accepts all well-pleaded factual allegations as true, accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, draws all reasonable inferences in favor of the non-moving party, and only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[26]  However, the Court must "ignore conclusory allegations that lack specific supporting factual allegations."[27]

## DISCUSSION

## A. THE COURT HAS VENUE

The Agreement has a "Jurisdiction" Clause – Section 11.4 of the Agreement. [28]  This section reads, in pertinent part:

> This Agreement shall be governed and construed in accordance with the laws of the State of Delaware, without regard to any applicable conflicts of law provisions (except to the extent that mandatory provisions of federal Law apply). Each of the parties hereby irrevocably submits to the exclusive jurisdiction and venue of the Delaware Court of Chancery (and if the Delaware Court of Chancery shall be unavailable, any court of the State of Delaware or the United States District Court

---

[23] *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. March 31, 2009).
[24] *Id.* (citing *Simon v. Navellier Series Fund,* 2000 WL 1597890, at *4 (Del. Ch. Oct. 19, 2000)).
[25] *HealthTrio, Inc. v. Margules*, 2007 WL 544156, at *2 (Del. Super.) (citing *Simon,* 2000 WL 1597890, at *4).
[26] *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[27] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).
[28] Pls.' Comp., Ex. A., at 71–72.

6

for the District of the State of Delaware) for the purpose of any Action arising out of this Agreement[.][29]

The parties expressly included a Delaware Court of Chancery ( "Chancery") carve-out. Under this section, JCM could file in another Delaware Court if Chancery is unavailable. Without more, JCM's legal claims do not create subject matter jurisdiction in Chancery.

Defendants raise three statutory arguments as to why Chancery is mandatory and, therefore, venue is improper in this Court. First, Defendants argue JCM made an unjust enrichment claim. Defendants argue 10 *Del. C.* § 341 governs this equitable claim. So, if the claim is not barred by the Agreement's exclusive remedy provision, Chancery retains jurisdiction.

Chancery has subject matter jurisdiction in three ways: (1) one or more claim for relief is equitable in character; (2) the plaintiff requests relief that is equitable in nature; or (3) subject matter jurisdiction is conferred by statute.[30] Although unjust enrichment is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief. The fact that a complaint contains a prayer for an equitable remedy, without more, does not conclude the jurisdictional analysis. In deciding whether or not equitable jurisdiction exists, the Court must look beyond the remedies nominally being sought, and focus upon the allegations of the complaint in light of what the plaintiff really seeks to gain by bringing his or her claim.[31]

---

[29] *Id.*
[30] *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004)
[31] *Id.*

7

JCM drafted the Complaint seeking legal, not equitable, remedies. The Court has heard unjust enrichment claims. Defendants conceded this point at oral argument and that they were abandoning the unjust enrichment argument.[32]

Defendants also argue that this is a technological dispute. Defendants state that 10 *Del. C.* § 346 ("Section 346") governs the parties' dispute, which grants exclusive jurisdiction to Chancery. JCM argues Section 346 does not apply because the parties agreed to sell the entire company, not just the Gen3 printer. JCM argues that the fact the sale included technology does not make it a technology dispute.

The statute, the implementing rules of procedure and similar civil actions demonstrate that Section 346 does not apply here to divest the Court of jurisdiction. Section 346 allows Chancery to implement rules to govern jurisdiction. Chancery Rule 91 allows technology disputes in Chancery only if it solely involves a claim for monetary damages in excess of one million dollars.[33] Chancery Rule 92 states:

> (a) Provided that the parties and the amount in controversy meet the eligibility requirements in 10 *Del. C.* § 346, a written agreement to engage in litigation in the Court of Chancery is acceptable if it contains the following language: "The parties agree that any dispute arising under this agreement shall be litigated in the Court of Chancery of the State of Delaware, pursuant to 10 *Del. C.* § 346. The parties agree to submit to the jurisdiction of the Court of Chancery of the State of Delaware and waive trial by jury."[34]

The Agreement did not include that language. The parties agreed to Chancery jurisdiction, unless it is unavailable. The parties do not mention Section 346 at all. The Court will not read in Chancery jurisdiction where the parties clearly did not intend to create it. Moreover, JCM's

---

[32] Defs.' Mot. to Dismiss Hr'g Tr. 4:17–5:6 (May 23, 2016).
[33] Del. Ch. R. 91.
[34] Del. Ch. R. 92.

8

other claims are also for legal, and not equitable, relief and Chancery would not necessarily have jurisdiction over such claims unless coupled with a Section 346 type action.

Defendants' third argument is that JCM's purchase of FutureLogic is tantamount to a sale of securities. Section 111 of Title 8 ("Section 111") governs a sale of securities.[35] Section 111(a)(2) grants Chancery jurisdiction to hear claims where a corporation: creates or sells *its* stock; offers to create or sell *its* stock; creates or sells rights or options respecting *its* stock; or offers to create or sell rights or options respecting *its* stock.[36] As such, Defendants argue JCM's only recourse is equity.

The Court also can have jurisdiction over a sale of a company's assets if the plaintiff asserts legal claims for relief. Indeed, many Complex Commercial Litigation Division cases involve asset sales. For example, the Court decided a case with similar facts in *ITW Glob. Investments Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*[37] In *ITW,* plaintiff alleged that defendants committed fraud, fraud in the inducement, and breach of contract in connection with plaintiff's acquisition of a business from defendants.[38] The same allegedly occurred here. JCM purchased a company from Defendants, and allege they were fraudulently induced into doing so.

Now, the Court does understand that the purchase of assets here was the purchase of FutureLogic stock, but FutureLogic is not the "Seller" in the Agreement and FutureLogic is not selling its stock. Instead, FL Holdings (defined in the Agreement as the "Seller") sold assets, the FutureLogic stock it held (otherwise known as "Purchased Units"),[39] to JCM Innovation.[40]

---

[35] 8 *Del. C.* § 111.

[36] 8 *Del. C.* § 111(a)(2)(emphasis added).

[37] 2015 WL 3970908, at *1 (Del. Super. June 24, 2015)

[38] *Id.*

[39] Pls.' Comp., Ex. A., at 1 ("Purchase Units" is defined as all of the issued and outstanding equity interests of FutureLogic).

[40] The Court needs to note that Defendants contend in their reply brief that "…under the Agreement, the Company sold its stock to Plaintiffs." Defs.' Rep. at 3. For this proposition, Defendants refer the Court to Section 2.1(a) of the Agreement. *Id.* Section 2.1(a) does not provide that FutureLogic (defined by Defendants as "Company" in their

9

Understanding this, the Agreement is more properly characterized as an asset purchase agreement and not an agreement where a company sells its stock.

## B.  SECTION 2.5 IS A POST-CLOSING PROCEDURE, NOT MANDATORY ADR

Defendants contend that Section 2.5 of the Agreement bars JCM's claims.  Defendants allege Section 2.5 is a mandatory alternative dispute resolution mechanism which the parties must go through prior to litigation.  JCM argues that Section 2.5 is not mandatory ADR, and the parties are not "quibbling over math."[41]

Section 2.5 does not constitute ADR.  It is a post-closing procedure for the parties to resolve discrepancies in the purchase price and make post-closing adjustments.[42]  This civil action involves claims for purported breaches of contract, fraud and unjust enrichment.  JCM seeks more than an adjustment to purchase price, working capital, closing cash, the amount of indebtedness, or estimated transaction expenses. [43]  Moreover, Defendants' cited cases are inapposite.  In *Weiner v. Milliken Design, Inc.,*[44] the parties disagreed over the scope of arbitration.[45]  It was not a disagreement over whether arbitration was mandatory.

Nothing in the Agreement mandates that the parties' post-closing process must precede any indemnification argument, fraud claim, or unjust enrichment claim.  It is true that JCM's damages for indemnification claims are controlled by Section 9.4 of the Agreement.[46]  But,

---

briefing) sold its stock to JCM Innovation.  Rather, section 2.1(a) provides that, at closing, Seller (defined in the Agreement as FL Holdings) will sell the "Purchased Units" to JCM Innovation.  Purchased Units is defined as "all of the issued and outstanding equity interests of [FutureLogic]…."  Defendants' argument in their reply brief creates a misimpression that FutureLogic sold its stock to JCM Innovation.  The reality is that FL Holdings sold an asset – its equity holdings in another entity (recapitalized FutureLogic) – to JCM Innovation.

[41] Pls.' Ans. at 18.

[42] Pls. Ex. A. at 17-20.

[43] *Id.*

[44] 2015 WL 401705 (Del. Ch. Jan. 30, 2015).

[45] *See Id.* at *1.

[46] *See* Pls.' Comp., Ex. A., at 62–63 (Detailing Defendants' indemnification obligations).

nothing states that the parties have to determine the Final Purchase Price first, prior to litigating over alleged damages on other types of claims.

## C. THE EXCLUSIVE REMEDY CLAUSE PRECLUDES PLAINTIFFS' BREACH OF CONTRACT, INDEMNIFICATION, IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIMS

Defendants argue that Counts I, II, III, IV and V (unjust enrichment) of the Complaint (*i.e.*, JCM's breaches of contract claims, indemnity and implied covenant of good faith and fair dealing claim) all fail because the contract's exclusive remedy provision limits Plaintiffs' remedies.[47]

JCM counters that the exclusive provision expressly carves out "claims arising from fraud." So, JCM is not barred from bringing its claims because they stem from Defendants' alleged fraud.[48] Second, JCM contends that Defendants' intentional fraud voids the clause. Defendants' fraudulent conduct goes against public policy, and JCM does not have to comply with the clause.

Section 9.9, the exclusive remedy provision, states:

From and after the Closing, except for the resolution of disputes relating to Section 2.5, the sole and exclusive remedy for any breach or failure to be true and correct, or alleged breach or failure to be true and correct, of any representation or warranty or any covenant or agreement in this Agreement (**other than for claims arising from fraud**), **shall be indemnification in accordance with this ARTICLE IX** and, as applicable, ARTICLE VIII. The parties have voluntarily agreed to define their rights, liabilities and obligations respecting the subject matter of this Agreement exclusively in contract (**other than for fraud**) pursuant to the terms and provisions of this Agreement and their sole and exclusive remedies regarding the subject matter of this Agreement **(other than for fraud)** shall be remedies available at law or in equity for breach of contract only (as such remedies may be limited by the express terms of this Agreement). Notwithstanding anything to the contrary in this Section 9.9, the Parties shall retain (a) remedies that cannot be waived as a matter of Law and (b) any equitable relief to which any Party shall be entitled under this Agreement or (c) **to seek any remedy related to fraud.**[49]

---

[47] Defs.' Op. Br. at *21–22.

[48] Pls.' Ans. at *20–21.

[49] Pls. Comp., Ex. A., pp. 65–66 (emphasis added).

The Exclusive Remedy Provision explicitly sets forth JCM's options for claims under the Agreement. JCM can go through the indemnification process, or it can bring fraud claims. JCM attempts to disregard the exclusive remedy provision by claiming Defendants' fraudulent conduct vitiates the entire clause. But, Plaintiffs do not provide any case law supporting this conclusion. Moreover, the Complaint alleges fraud in the inducement as to the entire Agreement. To avoid the application of Section 9.9 but still assert breach of contract type claims, the Complaint would need to be more "surgical" in nature. In other words, JCM would need to allege facts demonstrating that Section 9.9 is void for public policy reasons, or was somehow negotiated with fraudulent intent and that Section 9.9 should be severed from the rest of the Agreement.

Defendants cite several cases in support.[50] While none of them deal with exclusive remedy provisions with fraud carve-outs, the holdings are helpful here. For example, in *Transched Sys.*, the Court granted a defendant's motion to dismiss for a plaintiff's attempt to bring a claim in violation of the parties' contract's exclusive remedy provision.[51] But, the Court did permit Plaintiff to amend its complaint to bring fraudulent claims.[52] The Court was concerned with "contractual provisions such as the ones at issue here would insulate or protect a party whose conduct would be fraudulent in nature. In spite of due diligence by sophisticated parties, the Court can never be in a position to condone or prevent redress for clearly fraudulent activity."[53]

---

[50] *Abry Partners V, L.P. v. F&W Acquisition LLC,* 891 A.2d 1032 (Del. Ch. 2006); *Transched Sys. v. Versyss Transit Solutions, LLC*, 2008 WL 948307 (Del. Super. Apr. 2, 2008).
[51] *Transched Sys.,* 2008 WL 948307, at *2.
[52] *Id.* at *4.
[53] *Id.*

12

Delaware has a strong public policy distaste for fraud. JCM appears to have understood for this case. JCM has plead a fraud and an unjust enrichment claim. Those will proceed. The Exclusive Remedy Provision, however, bars JCM's contractual claims. JCM and its counsel are not "unsophisticated part[ies] or part[ies] lacking bargaining clout."[54] Nor did JCM sign a contract with a boilerplate merger clause.[55] Therefore, the "vitiation" claim cannot extend to those types of claims.

The Court will not dismiss the unjust enrichment claim – the second Count V. An unjust enrichment claim is a quasi-contractual claim, but it is a claim that proceeds under the theory that no contract exists. The courts developed unjust enrichment as a theory of recovery to remedy the absence of a formal contract and a plaintiff cannot recover under this theory if a contract is a measure of the plaintiff's rights.[56] Logically, the Court cannot, at this stage in the proceedings, use a provision of the Agreement to dismiss JCM's unjust enrichment claim that must rely on the theory there is no valid Agreement.

## D. PLAINTIFFS VALIDLY PLEAD FRAUD

In order to state a valid claim for fraud, JCM must allege: (1) Defendants falsely represented or omitted facts that the Defendants had a duty to disclose; (2) the Defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the Defendants intended to induce Plaintiffs to act or refrain from acting; (4) Plaintiffs acted in justifiable reliance on the representation; and (5) the Plaintiffs were injured by their reliance.[57] Fraud must be plead with particularity.[58]

---

[54] *Abry,* 891 A.2d at 1061.
[55] *Id.*
[56] *ID Biomedical Corp. v. TM Technologies, Inc.*, C.A. No. 13269, 1995 WL 130743, at *15 (Del. Ch. Mar. 16, 1995).
[57] *DCV Holdings, Inc. v. ConAgra, Inc.,* 889 A.2d 954, 958 (Del. 2005).
[58] Super. Ct. Civ. R. 9(b).

13

Defendants claim JCM did not validly plead fraud. And, if they did, the Agreement's warranty, anti-reliance, and integration clauses bar the claim.

Section 3.23 of the Agreement states:

EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN SECTIONS 3.1 THROUGH 3.23 OF THIS ARTICLE III (INCLUDING THE RELEVANT PORTIONS OF THE DISCLOSURE SCHEDULE), THE COMPANY MAKES NO EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO THE COMPANY, AND PURCHASER HEREBY DISCLAIMS ANY SUCH REPRESENTATION OR WARRANTY IN CONNECTION WITH THE EXECUTION AND DELIVERY OF THIS AGREEMENT AND THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.[59]

The anti-reliance clause, Section 4.10, states:

Purchaser's investigation of Seller, the Company and its Subsidiaries, Purchaser and its Representatives have received from Seller and its Subsidiaries (individually or through its Representatives) certain projections, estimates and other forecasts and certain business plan information (collectively, "Projections"). Purchaser acknowledges that there are uncertainties inherent in attempting to make such Projections, that it is familiar with such uncertainties, that it is making its own evaluation of the adequacy and accuracy of all Projections so furnished to it and any use of, or reliance by, it on such Projections shall be at its sole risk, and without limiting any other provisions herein, that it shall have no claim against anyone with respect thereto; provided, **that the foregoing shall not be interpreted to waive any rights that Purchaser has with respect to recovery for breaches of express representations and warranties made by Seller or the Company in ARTICLE III of this Agreement or for any intentional misconduct by Seller, the Company, its Subsidiaries, or any person authorized to act on behalf of Seller, the Company or its Subsidiaries.**[60]

The integration clause states:

This Agreement, the other Transaction Documents and the certificates, documents and instruments and other agreements specifically referred to herein or therein or delivered pursuant hereto or thereto, including the Exhibits and the Schedules (including the Disclosure Schedule), and the Confidentiality Agreement (a) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, both written and oral, among the Parties with respect to the subject matter hereof, (b) shall not be assigned by operation of law or otherwise except as otherwise specifically

---

[59] Pls. Comp., Ex. A., at p. 39.
[60] *Id.* at p. 44 (Emphasis Added).

provided herein or therein, except Purchaser and Seller may assign this Agreement and any Transaction Document, in whole or in part, to any Affiliate by operation of law or otherwise, and (c) shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person not a party to this Agreement other than the Purchaser Indemnitees, the Seller Indemnitees and Arnold & Porter LLP.[61]

Defendants argue these clauses bar JCM's extra-contractual contentions. JCM contends that there is an intentional misconduct carve-out in Section 4.10. Further, JCM argues that it made contractual references in its complaint. For example, JCM alleges paragraphs 32-34 of its complaint lay out fraudulent warranties that the printers conformed with all applicable contractual commitments and that FutureLogic had no liability for replacement or repair.[62] JCM claims that these knowingly false statements directly violate Section 3.8, one of the warranties preserved in 3.23.

Delaware courts have consistently held that to successfully plead a fraud claim, the allegedly defrauded plaintiff must have sustained damages as a result of a defendant's action."[63] The damages allegations may not simply 'rehash' the damages allegedly caused by the breach of contract."[64] Further, Delaware law holds that a plaintiff "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."[65] In other words, a plaintiff cannot state a claim for fraud simply by adding the term "fraudulently induced" to a complaint.[66] Thus, couching an alleged failure to comply with a contract as a failure to disclose an intention to take certain actions arguably

---

[61] Pls. Comp., Ex. A., at p. 74.
[62] Pls. Comp., at ¶¶ 31–32.
[63] *ITW Glob. Investments Inc. v. Am. Indus. Partners Capital Fund IV, L.P.,* 2015 WL 3970908, at *5 (Del. Super. June 24, 2015).
[64] *Id.*
[65] *Narrowstep, Inc. v. Onstream Media Corp.,* 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010).
[66] *Id.*

inconsistent with that contract is "exactly the type of bootstrapping this Court will not entertain."[67]

JCM's fraud claim states Defendants intentionally and knowingly made numerous false representations, and concealed their knowledge about Gen3's quality.[68] JCM was "induce[d] to enter into the Purchase Agreement."[69] This is akin to the issue Chancery dealt with in *Narrowstep, Inc.* Vice Chancellor Parsons denied a defendant's "bootstrap" argument, holding that:

> [Defendant] repeatedly lied to [Plaintiff] at multiple steps in the Integration process in order to strip [Plaintiff] of its valuable assets with no intention of closing the merger. This conduct, if true, goes beyond a mere intention not to comply with the terms of the Agreement. . . . The Agreement is not the source of [Plaintiff's] fraud claim, but rather the instrument by which Defendant perpetrated its broader scheme to loot Narrowstep.[70]

The same purportedly occurred here. JCM alleges Defendants repeatedly misled it throughout the negotiation and signing. If true, then the Agreement is the "instrument by which Defendants perpetrated its broader scheme" to defraud JCM. At this juncture, JCM's fraud claim is different from its breach of contract claim.

---

[67] *Id.*
[68] Pls. Comp. ¶¶107–08.
[69] *Id.* at ¶112.
[70] *Narrowstep, Inc.* 2010 WL 5422405, at *15.

16

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part.**  The Superior Court has jurisdiction over this matter.  Section 2.5 of the Agreement is a post-closing procedure, not mandatory ADR.  The contract's exclusive remedy provision bars JCM's contractual claims, Counts I, II, III and IV.  JCM has validly plead claims for fraud and unjust enrichment.

**IT IS SO ORDERED.**

/s/ *Eric M. Davis*
Eric M. Davis, Judge

17